UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

    Phillip Burkart, Sr., d/b/a             Case No.: 08-61077
    Burkart Automotive,                     Chapter 13

                   Debtor.
_____

APPEARANCES:

MARK A. WOLBER, ESQ.[1]
*Attorney for Debtor*
239 Genesee Street
Suite 307
Utica, New York 13501

DAVID G. GOLDBAS, ESQ.
*Attorney for Gwen Deragon*
258 Genesee Street
Utica, New York 13502

MARK W. SWIMELAR, ESQ.
*Chapter 13 Trustee*
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

       The limited matter before the Court is whether Phillip Burkart, Sr. ("Debtor") is entitled to

an award of actual and punitive damages against Gwen Deragon ("Deragon") pursuant to § 362(k)

---

     [1] Debtor is represented in this Chapter 13 case by Attorney David M. Giglio ("Giglio"). For the limited purpose of prosecuting the automatic stay violation by Deragon, however, Debtor retained and is represented by Attorney Mark Wolber ("Wolber").

2

of the United States Bankruptcy Code.[2] By Order dated February 19, 2009 (No. 63), the Honorable Stephen D. Gerling, Retired Chief United States Bankruptcy Judge, found that Deragon willfully violated the automatic stay imposed by Debtor's Chapter 13 bankruptcy proceeding.[3] The Court directed an evidentiary hearing on the issue of damages, which was held on November 9, 2009. Pursuant to the Court's August 14, 2009 Scheduling Order (No. 75), the parties were directed, on or before October 30, 2009, to (1) exchange and file with the Court their witness lists, (2) exchange and submit copies of exhibits intended to be offered into evidence at the hearing to Chambers, and (3) provide the Court with a list of exhibits which could be stipulated into evidence or offered without objection as to foundation. Debtor did not timely comply with these directives. Debtor's witness list was filed on November 8, 2009 (No. 82), identifying Debtor as the sole witness to offer testimony regarding the harm and anxiety he suffered as a result of Deragon's willful stay violation. Deragon filed her witness and exhibit list on October 29, 2009 (No. 80), listing Lloyd Schor ("Schor"), Utica City Marshal, as her sole witness and offering six exhibits in her defense, all of which were orally stipulated into evidence by the parties during the hearing. The Court allowed Debtor to proceed on the scheduled hearing date notwithstanding Debtor's violation of the Court's Scheduling Order, but counsel was advised that the issue of sanctions would be taken under advisement. The matter was taken under submission at the close of the evidentiary hearing on

---

[2] 11 U.S.C. §§ 101-1532 (effective Oct. 17, 2005) ("Code").

[3] The Court will not revisit the issue of willfulness despite the argument made by Attorney Goldbas ("Goldbas"), Deragon's counsel, that his client's actions constituted a non-willful, "technical violation" of the automatic stay caused by acts of omission and "innocent error." On February 4, 2009, Deragon moved for reconsideration of Retired Chief Judge Gerling's findings and Order (No. 55), which the Court heard and denied on February 24, 2009. The Court will, however, consider counsel's argument to the extent that it is relevant to the Court's determination regarding punitive damages.

November 9, 2009. The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

## JURISDICTION

The Court has core jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), and 1334(b).

## FACTS

The parties have a difficult history. They are familiar adversaries and their prior dealings with one another are indisputably relevant to the Court's ruling in the matter *sub judice*. In 2002, Deragon, acting as administratrix of the Estate of Ivan Chrisman ("Chrisman"), commenced a civil suit against Debtor in the Oneida County Supreme Court to recover monies converted by Debtor from Chrisman ("State Court Action"). (*See* Apr. 26, 2007 Letter Decision of the Hon. John W. Grow, New York State Supreme Court Justice, Def.'s Ex. 5.) Goldbas represented Deragon in the State Court Action and therein proved that Debtor defrauded Chrisman, Deragon's mentally handicapped brother, of certain retirement savings and checking account proceeds which Debtor then converted for his own use and benefit. (*See* Oct. 31, 2006 Decision on Arbitration, Def.'s Ex. 4.) Deragon was initially awarded a money judgment against Debtor in the amount of $42,507.59, plus interest. Debtor sought to vacate the arbitrator's award and by Order dated May 14, 2007, Justice Grow reduced but confirmed the award and judgment to $35,507.59, plus interest. (Def.'s Ex. 6.) The final judgment awarded, including interest, totaled $67,927.54 ("Judgment"). (Def.'s Ex. 7.) The Judgment was entered in the Oneida County Clerk's Office on September 20, 2007, and unanimously affirmed by the New York State Appellate Division for the Fourth Judicial Department

by Memorandum and Order dated October 3, 2008. (Def.'s Ex. 8.)

In an effort to enforce the Judgment on Deragon's behalf by levying on Debtor's personal bank accounts, Goldbas delivered three executions to Schor on or about January 25, 2008. The executions were addressed to the following garnishees: (1) AmeriCU Credit Union ("AmeriCU") (Def.'s Ex. 1); (2) Bank of America (Def.'s Ex. 2); and (3) Bank of Utica (Def.'s Ex. 3). Goldbas also attempted to enforce the Judgment on Deragon's behalf by levying on Debtor's unencumbered commercial real property located at 114 Oriskany Street, Yorkville, New York ("Yorkville Property"), the site of Debtor's automotive business. On or about January 22, 2008, Goldbas delivered an execution to the Oneida County Sheriff demanding sale of the Yorkville Property.

Debtor filed a Chapter 13 petition and plan ("Plan") on May 6, 2008. The Plan provided for a one hundred percent (100%) distribution to general unsecured creditors, including Deragon. (No. 2.) Deragon, through Goldbas as her chosen bankruptcy counsel, actively participated in Debtor's Chapter 13 case. Deragon filed a motion to lift the automatic stay, dismiss the filing, or deny confirmation of Debtor's Plan on May 23, 2008. (No. 13.) Goldbas appeared on behalf of Deragon at the § 341 meeting of creditors on May 29, 2008. Debtor filed an Amended Chapter 13 Plan ("Amended Plan") on June 23, 2008 (No. 22), and Amended Schedules I and J on June 26, 2008 (No. 24), to address creditors' opposition to the filing and Plan. Deragon filed an objection to confirmation of the Amended Plan on July 25, 2008. (No. 27.) Deragon withdrew both her motion and her objection to confirmation, however, by letter dated October 26, 2008. (No. 38.) The Court held Debtor's confirmation hearing on November 24, 2008, and issued an oral ruling confirming Debtor's Amended Plan. An Order of Confirmation was entered on April 16, 2009, which provided

5

that Deragon be paid in full in accordance with her filed proof of claim.[4] (No. 66.)

Debtor filed the underlying § 362(k) motion on January 6, 2009, alleging that Deragon violated the automatic stay by causing Citizen's Bank ("Citizen") and AmeriCU to freeze Debtor's accounts or turn over Debtor's personal property to Schor pursuant to the income executions. (Debtor's Affirmation ¶¶ 4-5, No. 44.) Consequently, Debtor has requested actual and punitive damages in the aggregate amount of $21,000.00, together with an award of attorneys' fees in the amount of $7,000.00.

As stated above, this Court conducted an evidentiary hearing on the limited issue of damages on November 9, 2009. Debtor testified on his behalf and the Court found him to be calm in demeanor and credible. He is a sixty-six-year old businessman who has owned and operated an automotive parts and painting business in Yorkville for several years. When Debtor became aware of the Judgment and execution, he contacted Wolber, who referred him to Giglio for bankruptcy advice. Approximately two months after Debtor filed his Chapter 13 petition, at or near the time of the Fourth of July holiday, he learned that his bank accounts at AmeriCU and Citizen's had been garnished at the direction of Deragon. In total, $159.99 was removed from Debtor's accounts and turned over to Schor. Debtor contacted Wolber after being unable to reach Giglio due to the holiday. Wolber immediately rectified the situation, caused the funds to be returned to Debtor within a matter of days, and advised Debtor that the executions had been lifted. As a result of Deragon's actions, and as discussed in further detail below, Debtor testified that he was "very distraught" and emotionally harmed.

Schor also testified and presented as a credible witness in Deragon's defense at the

---

[4] Deragon filed Proof of Claim Number 2 on May 12, 2008, in the amount of $72,678.14.

evidentiary hearing, but his recollection of events was based on business records that admittedly were incomplete. Schor's testimony included the following statements: (1) he believed he received two income executions from Goldbas in October 2007; (2) he did not have a record of receipt for the third income execution; (3) he may have had the income executions for approximately one month prior to delivering them to the financial institutions; (4) on June 30, 2008, he sent the income executions to AmeriCU and Citizen's; and (5) he did not recall how or why he delivered the income execution to Citizen's, which was not an identified garnishee. Schor's testimony further established that: (1) he received funds in the amount of $159.99 from AmeriCU in June 2008, which he promptly turned over to Goldbas; (2) Debtor visited his office between June 30, 2008, and July 9, 2008, and he "appeared upset;" (3) Schor first learned of Debtor's bankruptcy filing from Goldberg on or about July 7, 2008, and he in turn contacted the financial institutions to advise them to take no further action with respect to Debtor's accounts; (4) on July 9, 2008, he received a returned check from Goldbas which originated from AmeriCU; and (5) on July 10, 2008, he turned those funds over to Wolber to be returned to Debtor.

## DISCUSSION

*I.    Sanctions for Violation of This Court's Scheduling Order*

Courts have broad discretion to impose sanctions for a party's violation of a scheduling order. *Rocin Liquidation Estate v. Greyhound Bus Lines (In re Rocor Int'l, Inc.)*, 2006 Bankr. LEXIS 166, at *13 (B.A.P. 10th Cir. Feb. 10, 2006) (*citing Comcoa, Inc. v. NEC Tel., Inc.*, 931 F.2d 655 (10th Cir. 1991)); *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 485 (Bankr. E.D. Va. 1997); *In re LTV Steel Co.*, 307 B.R. 37, 48 (Bankr. N.D. Ohio 2004) (*citing Beil v. Lakewood Eng'g and Mfg. Co.*, 15 F.3d 546 (6th Cir. 1994)). A court's enforcement of its scheduling order is governed

by Federal Rule of Bankruptcy Procedure 7016, which incorporates Federal Rule of Civil Procedure ("Rule") 16(f). Rule 16(f) permits, *inter alia*, upon motion or on the judge's own initiative, the imposition of sanctions, including those authorized by Rule 37(b)(2)(A)(ii)-(iv), if a party or a party's attorney fails to obey a scheduling or pretrial order. FED. R. CIV. P. 16(f)(1)(c). Rule 37, which governs discovery disputes, permits several forms of sanctions, including preclusion, dismissal, rendering of a default judgment, or contempt. FED. R. CIV. P. 37(b)(2)(A)(ii)-(iv).

"The judicial power to sanction for violation of scheduling orders and lack of prosecution is absolutely essential to a court's ability to control its docket." *Bonfiglio v. Centro Evangelista Jahova Shammah (In re Bonfiglio)*, 231 B.R. 197, 198 (Bankr. S.D.N.Y. 1999); *see also H.P. Hood, Inc. v. Parker (In re Parker)*, Ch. 7 Case No. 97-17732, Adv. No. 98-91154, slip op. at 3 (Bankr. N.D.N.Y. Apr. 24, 2000) (it is impossible for the court to manage the flow of its cases in an efficient manner when scheduling orders are routinely dismissed and/or ignored by the attorneys that appear before it). Because "lax enforcement of standard procedures, rules and court orders results in the certainty of lax compliance and equally certain delay and prejudice to parties in interest," *In re Bonfiglio*, 231 B.R. at 198, the Court cannot tacitly ratify such conduct by failing to impose sanctions when appropriate.

Wolber indicated to the Court that he did not timely file the list of witnesses and exhibits because he believed he did not have to identify Debtor as a material witness since Debtor is the movant in this contested matter and his testimony regarding damages should have therefore been anticipated by Deragon and the Court. The Court is not persuaded by this purported justification for violation of its Scheduling Order by a seasoned attorney. Wolber did not indicate that he attempted to comply or that he was unable to comply with the Court's directives within the

8

applicable time frame set by the Court more than two and a half months earlier. Further, based on the generality of Debtor's demand for damages and the amount sought, it was not apparent to either the Court or Deragon whether Debtor would be offering medical experts or evidence to support a claim for emotional distress. Accordingly, the Court hereby imposes a sanction of $250.00, payable by Wolber to the Clerk of Court as further directed herein, for failure to abide by the Court's Scheduling Order.

*II.    Damages*

Where the automatic stay is willfully violated, § 362(k)(1) requires that "the individual injured by such violation . . . recover actual damages." Recovery of punitive damages is also permitted in appropriate circumstances. 11 U.S.C. 362(k)(1). The Court's determination of damages is governed by the standard articulated by the Second Circuit:

> [A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h). This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of the automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.

*In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990) (applying former § 362(h), which has been redesignated as § 362(k) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). Actual damages are not limited to a debtor's financial loss as a result of a willful stay violation; rather, a debtor may also recover damages for "the emotional and psychological toll that a violation can exact from an individual." *Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004); *accord In re Schultz*, 2009 Bankr. LEXIS 2645, at *17 (Bankr. N.D.N.Y. Feb. 20, 2009) ("even where no pecuniary loss is shown, a court may

9

nevertheless award actual damages for emotional distress") (*citing In re Ficarra*, Ch. 13 Case No. 00-62714, slip op. at 11 (Bankr. N.D.N.Y. Apr. 17, 2002); *In re Griffin*, 415 B.R. 64 (Bankr. N.D.N.Y. 2009)).

A claim for emotional distress damages is sustainable, however, only upon a showing of "clear evidence to establish that significant harm occurred as a result of the violation . . . ." *In re Dawson*, 390 F.3d at 1148. Emotional distress damages "must be more than 'fleeting, inconsequential and medically significant' to be compensable." *In re Griffin*, 415 B.R. at 68 (*quoting Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 250-51 (N.D. Ill. 2000), *aff'd* 239 F.3d 876, 881 (7th Cir. 2001)). An individual may establish significant emotional distress damages by presenting corroborating medical evidence, or the Court may justifiably presume the same where, "for example, the debtor is physically threatened, the violative act constitutes an invasive and personal attack, or a tangible and substantially adverse action results from the stay violation." *Id.*

In making its determination as to damages, Goldbas asks the Court to consider a number of mitigating factors, including: (1) Debtor's ill motive for prosecuting Deragon's willful stay violation – stating that Debtor caused Deragon to withdraw her objection to confirmation of Debtor's Amended Plan and motion knowing at the time that he would sue Deragon to recoup monies to offset the $72,678.14 payment he owed her pursuant to the terms of the Amended Plan; (2) the de minimus impact that execution of $159.99 had on Debtor; and (3) the short length of time, which Debtor conceded was approximately seventy-two hours, between Debtor's knowledge of the executions and Wolber's assurance to Debtor that his Chapter 13 filing was valid and the automatic stay in place, but wrongfully violated.

By his own admission, Debtor did not suffer any actual pecuniary loss in this case. Although

10

Debtor testified that one bank "swept money out of his account despite his Chapter 13 filing," and another bank told him he couldn't use his account, Debtor did not testify that he missed work, had checks returned for insufficient funds, or that he could not satisfy his obligations because of his inability to access funds. Moreover, Debtor testified that the funds garnished by AmeriCU in the amount of $159.99 were promptly returned to him. Consequently, whether Debtor is entitled to an award of actual damages, over and above attorneys' fees, turns on the narrow issue of whether he has met his burden of proving with reasonable certainty that he suffered significant emotional harm as a direct result of Deragon's willful violation of the automatic stay. *See In re Dawson*, 390 F.3d at 1148-49 (A debtor must "demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process).").

Based on Debtor's testimony, which is all the Court has before it to render its determination, the Court cannot make the requisite finding that Debtor in fact suffered significant emotional harm. Debtor testified that Giglio's advice led him to believe that once he filed for bankruptcy protection, the forced sale of the Yorkville Property would be "put on hold" and "he would be protected until he set up a program to pay [creditors] incrementally [through the] bankruptcy court." He further testified that when he learned of the garnishments, he was "completely at awe," and he didn't understand if his bankruptcy filing was somehow "disallowed, invalid, or inadequate." He "didn't know what to think," "thought everything was coming down around him," and feared he would lose the Yorkville Property and his business which was the only means he had to "make a living." Debtor stated that he was "surprised something like this could happen," and he feared that his assets were not going to be protected through the bankruptcy process. In a targeted attack on Goldbas,

11

Debtor also elaborated that he was "shocked" by the fact that an attorney and officer of the court could violate a court order and knowingly ignore the automatic stay.[5] When questioned about the duration of his anguish, however, Debtor clarified that he was "relieved" upon learning a few days later that the automatic stay was in fact effective, but he was "still very upset for a week or so afterward." Finally, Debtor stated that he was "very distraught and unable to sleep or eat for one week." Emotional distress damages must be reserved for cases in which the debtor can present competent evidence of a genuine emotional issue. 9B Am. Jur. 2d Bankruptcy § 1957 (2010). Clearly, every willful violation of the automatic stay will not entitle the debtor to damages for emotional distress. This Court recently held that where the circumstances of a violation are patently or obviously egregious, emotional distress damages can be proven and awarded merely by

---

[5] Although Debtor's testimony in this regard goes to the issue of willfulness rather than damages, the Court takes this opportunity to remind counsel, the bar, and creditors of their obligations under § 362 once collection proceedings have been commenced pre-petition. Retired Chief Judge Gerling spoke to this issue in the recent *Schultz* decision, stating:

> The Court is of the opinion that once a creditor has put the wheels of collection in motion against a judgment debtor, upon learning of the filing of a bankruptcy by that debtor, the creditor must insure that the wheels of collection come to an immediate halt. Insuring that will happen requires more than simply notifying various types of collectors, e.g.[,] garnishees, sheriffs, marshals, employers[,] and others. There must be some degree of reasonable follow-up whereby the creditor is assured that the collection activity has ceased.
> 
> . . . .
> 
> . . . If a creditor is permitted to avoid being charged with a willful violation by simply notifying third party collectors to cease and desist all collection activities and then failing to follow-up on that notice to insure that those activities have actually terminated, it opens the door to continued abuse of the stay. In addition, without the threat of a potential award of damages, creditors have no incentive to adopt a strict policy to avoid future stay violations.

*In re Schultz*, 2009 Bankr. LEXIS 2645, at *13-16.

12

credible debtor testimony alone. *In re Griffin*, 415 B.R. at 67 (citations omitted). In the absence of egregious conduct, however, the Court must guard against frivolous claims by awarding emotional distress damages only where the emotional or psychological toll on the debtor is clearly proven to have been medically significant. *In re Grand*, 2009 Bankr. LEXIS 743, at *5 (Bankr. D. Haw. Jan. 23, 2009). The stay violation complained of in the instant case is not so egregious in nature as to warrant an emotional distress award without other corroborating evidence. Here, Debtor did not testify that he
suffered any substantially adverse health effects or condition as a result of Deragon's willful violation of the automatic stay, and he failed to offer any medical evidence to otherwise support his claim of emotional distress. In the Court's view, although Debtor credibly testified that he was temporally harmed by Deragon's neglect, he simply did not evince a level of severity necessary to compensate an emotional injury.

Courts in this circuit recognize that damages consisting of attorneys' fees and costs may be appropriate even where a debtor has suffered no other compensable harm, provided the circumstances do not point out an inclination for excessive litigiousness. *Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC)*, 2005 U.S. Dist. LEXIS 2046, at *15 n.4 (N.D.N.Y. Feb. 11, 2005), *aff'd*, 2006 U.S. App. LEXIS 5468 (2d. Cir. Mar. 2, 2006); *In re Seniecle*, Ch. 7 Case No. 06-34763, slip op. at 6 (Bankr. N.D.N.Y. Apr. 20, 2009) (*citing In re Sullivan*, 367 B.R. 54, 66 (Bankr. N.D.N.Y. 2007)). Debtor reserved his right to file time records in support of his request for attorneys' fees in the amount of $7,000.00, pending the Court's ruling on the merits.

Neither the circumstances of this case nor Wolber's history in this Court suggest an

13

"excessively litigious approach" to violations of the automatic stay. Further, Deragon's conduct, or, more appropriately, Goldbas' conduct as her counsel, was wrongful and inexcusable. Goldbas acknowledged that he should have followed up with Schor to cease any collection activity upon learning of Debtor's bankruptcy filing, but he did not do so because he believed the executions lapsed as a matter of law ninety days after issuance. As stated by the Court in *Schultz*, however, a creditor cannot sit back on its heels and do nothing once collection activities have been initiated against a debtor. Rather, a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against a debtor. *In re Schultz*, 2009 Bankr. LEXIS 2645, at *14 (*citing In re Parry*, 328 B.R. 655, 659 (Bankr. E.D.N.Y. 2005)). The Court will therefore consider Debtor's request for attorney's fees when the same is ripe for adjudication.

The final issue commanding the Court's attention is that of punitive damages. Punitive damages for a willful violation of the automatic stay are warranted only where there is an actual finding of maliciousness or bad faith on the part of the offending creditor. *Crysen*, 902 F.2d at 1105. "The primary purposes of an award of punitive damages are punishment and deterrence." *Colorado East Bank & Trust v. McCarthy (In re McCarthy)*, 2009 Bankr. LEXIS 3976, at *36 (Bankr. D. Colo. Nov. 30, 2009) (*citing In re Gagliardi*, 290 B.R. 808, 818 (Bankr. D. Colo. 2003)); *In re Rodion Lukach*, 2007 Bankr. LEXIS 1631, at *17 (Bankr. E.D.N.Y. May 8, 2007). In deciding whether circumstances exist for an award of punitive damages under § 362(k), courts examine the following factors: (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor. *Roche v. Pep Boys, Inc. (In re Roche)*, 361 B.R. 615, 624 (Bankr. N.D. Ga. 2005) (collecting cases); *In re Notabartolo*, Ch. 13 Case No. 03-10777, slip op. at 6 (Bankr.

N.D.N.Y. Feb. 16, 2006) (citations omitted).

The Court in this case does not have to reach beyond the first factor to determine that punitive damages are not appropriate under the circumstances presented. Deragon's willful stay violation was an act of omission, as opposed to commission. Accordingly, the Court cannot conclude that the actions of Deragon satisfy the high standard announced in *Crysen*.

## CONCLUSION

The Court concludes that Debtor's sole damages as a result of Deragon's willful violation of the automatic stay are attorneys' fees. Normally, where attorneys' fees are the only injury from a stay violation, the court must carefully review those fees "to avoid the reality or the appearance that the court is rewarding an excessively litigious approach to such violations." *Salem v. Paroli*, 260 B.R. 246, 257 (S.D.N.Y. 2001) (*citing In re Hill*, 222 B.R. 119, 124 (Bankr. N.D. Ohio 1998); *In re Haan*, 93 B.R. 439, 441 (Bankr. W.D.N.C. 1988)). In light of the Court's finding that Deragon's violation of the automatic stay was willful, and given Debtor's genuine though short-lived anxiety caused by the violation, Debtor's prosecution of the violation cannot be considered excessively litigious and Debtor is therefore entitled to an award of reasonable attorneys' fees.

Based on the foregoing, it is hereby

ORDERED, that Wolber shall pay a sanction in the amount of $250.00 to the Clerk of Court within thirty days of docket entry of this order; and it is further

ORDERED, that Wolber shall file an Affirmation certifying compliance within five days of payment; and it is further

ORDERED, that Debtor shall file and serve time records in support of his request for attorneys' fees incurred in connection with prosecution of his § 362(k) claim within fifteen days of

15

docket entry of this order; and it is further

ORDERED, that Deragon shall file and serve an objection, if any, to the attorneys' fees claimed so as to be made returnable no later than March 25, 2010; and it is further

ORDERED, that Debtor's request for actual damages arising out of emotional distress is denied; and it is further

ORDERED, that Debtor's request for punitive damages is denied.

IT IS SO ORDERED.

Dated at Utica, New York
this 9th day of February 2010

       /s/ Diane Davis_____
       DIANE DAVIS
       United States Bankruptcy Judge